UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARLENE DELGADO,

                      Plaintiff,

        -against-

CHAEL SONNEN, et al.,

                      Defendants.

24-CV-1690 (JGLC)

**ORDER ADOPTING &
MODIFYING REPORT AND
RECOMMENDATION**

JESSICA G. L. CLARKE, United States District Judge:

       Plaintiff Arlene Delgado is a lawyer and former senior advisor to Donald Trump's 2016 presidential campaign. Plaintiff filed this action on March 1, 2024 alleging that Defendant Chael Sonnen, a retired mixed martial arts fighter who previously competed in the Ultimate Fighting Championship ("UFC"), defamed her while he was a guest on a podcast called *Flagrant*. The *Flagrant* podcast is operated by Defendants Andrew Schulz and AlexxMedia LLC (collectively, "Podcast Defendants"). Plaintiff alleges that during *Flagrant*'s March 7, 2023 podcast episode,[1] Defendant Sonnen made false and defamatory remarks regarding Plaintiff's educational background and employment, and falsely claimed she "stalked" Sonnen such that she was banned from UFC venues. Below are Sonnen's statements in full context:

> A President of the United States, in their absolute inner circle, had a phony, and I knew the phony. And I knew the phony because the phony had come after me and it got all the way to the chief legal officer of the Ultimate Fighting Championship that had to put a notice at every venue that we went to, to ban this person who was stalking me, and that person was on the inner circle of a President [elect] of the United States. So I have to reach to the president, of which I don't know, to let them know that this human being is not who they're claiming they are, and they're getting ready to set you up. Not to mention, you're going to look like a fool when it comes out that this person is not named, does not have the title, and did not go to the school that you're running around Hannity and Colmes and telling them that they are. And I did. I got it to the president who removed this person . . . .

---

[1] The episode is accessible at https://www.youtube.com/watch?v=ltUI54a4Vzk.

Plaintiff alleges Sonnen acted maliciously in making the false statements, and that Podcast Defendants should have performed due diligence to ascertain the falsity of the statements.

On March 14, 2024, this Court referred the case to Magistrate Judge Jennifer E. Willis for general pre-trial matters, including a report and recommendation on any dispositive motion. ECF No. 7. Plaintiff filed an amended complaint on July 26, 2024. ECF No. 29. Defendant Chael Sonnen moved to dismiss the amended complaint on August 21, 2024 (ECF Nos. 33, 34) and Podcast Defendants filed a similar motion on August 26, 2024 (ECF Nos. 36, 37). Magistrate Judge Willis held oral argument on the pending motions on January 23, 2025, and solicited supplemental briefing from the parties regarding whether libel or slander law applied to the alleged defamatory statements. Through their supplemental submissions, the parties agreed that libel should apply. ECF Nos. 59, 60.

On February 18, 2025, Magistrate Judge Willis issued a Report and Recommendation on the pending motions, and recommended that: (1) they be denied as to all but two alleged defamatory statements (that Plaintiff had been banned from the UFC and that she was going to "set up" Donald Trump); (2) Plaintiff's aiding and abetting defamation claim be dismissed without prejudice and she been given leave to amend; and (3) Plaintiff's IIED and tortious interference claims be dismissed as duplicative, with no leave to amend those claims. ECF No 62 (the "R&R") at 42. All parties timely filed objections to the R&R, *see* ECF Nos. 64 ("Pl. Obj."), 65 ("Podcast Defs. Obj."); ECF No. 66 ("Sonnen Obj."), and responses to the objections (*see* ECF Nos. 68–70).

For the reasons stated herein, the R&R is ADOPTED in part and MODIFIED in part. The Court finds that the R&R correctly concluded that certain statements, considered in full context, could be defamatory, but finds that one additional alleged statement—that Plaintiff had been

2

banned from UFC venues—can also plausibly be characterized as defamatory when read in conjunction with the surrounding context. Accordingly, as per the R&R, the Defendants' motions to dismiss are GRANTED in part and DENIED in part.

## LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Within fourteen days after the magistrate judge has issued their report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* the portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). For portions of the report and recommendation to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 600 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (internal citation omitted). "To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error." *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 450 (S.D.N.Y. 2022). Finally, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y 2020) (internal citation omitted).

**DISCUSSION**

The Court adopts the recitation of facts set forth in the R&R and thus assumes the parties' familiarity therewith. The Court has reviewed the motions, the R&R, and the parties' objections and responses, and finds the R&R to be well reasoned and grounded in fact and law. The Court adopts nearly the entire R&R with one modification: the Court concludes that the statement that Plaintiff had been banned from UFC venues also can be considered defamatory under the circumstances. Accordingly, the Court SUSTAINS Plaintiff's objection with respect to that statement, but otherwise REJECTS all the parties' objections to the R&R as meritless or otherwise already considered, and properly rejected by, the R&R.

**I.    The Court Rejects Defendant Sonnen's Objections to the R&R**

In his objections, Defendant Sonnen mostly reiterates arguments and positions espoused in the underlying motions to dismiss which the R&R already properly considered and rejected.

First, Sonnen repeats his argument that the nature and tone of the *Flagrant* podcast makes clear that reasonable listeners would not have taken his statements to be factual. Sonnen Obj. at 9–11. In particular, he reiterates that the tone of the podcast is comedic, jocular, filled with emotionally charged language, and not to be taken seriously. *Id.* But the R&R correctly concluded that the podcast episode at issue contained a mix of overtly serious and hyperbolic commentary. R&R at 15–17. Moreover, the R&R also correctly noted that Sonnen delivered the alleged defamatory statements in an "unremarkable tone," prefaced the statements with hesitation, and that referred to himself as a "scumbag." *Id.* at 16. This would suggest, to a reasonable listener, that what Sonnen was about to say was meant to be kept confidential, not that it was false.

Second, Sonnen objects to the R&R's finding of actual malice, arguing that the Amended Complaint has not met the "high standard" required. Sonnen Obj. at 11–13. But the R&R

4

correctly found, and the Court adopts the conclusion, that the Amended Complaint plausibly alleges Sonnen knew of the falsity of these statements, given (1) Plaintiff confirmed she went to Harvard the first time they conversed; (2) Sonnen referred to her as "Harvard" throughout their friendship; and (3) Sonnen and Plaintiff had an amicable relationship for a not insignificant period of time. R&R at 29–30.

Sonnen next objects to the R&R's denial of the motion to dismiss by arguing the alleged statements do not constitute defamation *per se*. Sonnen Obj. at 13–15. Here, again, the Court finds the R&R to be well grounded in fact in law, because a statement that a lawyer did not actually go to law school or receive their degree would certainly injure their professional reputation. Similarly, assertions that someone is a "stalker" (i.e., that they committed a crime) also qualifies for *per se* defamation. R&R at 33–36. Still, Sonnen tries to object that Plaintiff suffered no special damages because "[w]here someone attends school is not relevant to their ability to engage in a professor or trade" and that "[t]here are countless people in this [c]ountry that did not attend Harvard." Sonnen Obj. at 14–15. This argument can only be characterized as unserious: of course, the harm to Plaintiff lies not in a misstatement of the caliber of the school she attended, but the implication that she *lied* about having gone to Harvard, or any law school, *at all*. In other words, the damage lies in the suggestion that Plaintiff purportedly misrepresented her experience and credentials, which would lead a reasonable person to see her as a fraud or as not credible.

Finally, Sonnen contends the R&R erred by concluding he waived a statute of limitations defense in his motion to dismiss. Sonnen Obj. at 15. The R&R correctly concluded it did not need to assess statute of limitations due to Sonnen's failure to raise it in the motion to dismiss. R&R at 36–37. However, the R&R did *not* conclude, and the Court does not read it to suggest,

that Sonnen is unable to assert statute of limitations as an affirmative defense in a forthcoming answer. Rather, the R&R merely concluded that statute of limitations need not be considered in ruling on the pending motions because they were not adequately raised. *Id.* For the avoidance of doubt, the Court makes clear Defendant Sonnen may still assert statute of limitations as an affirmative defense in any forthcoming responsive pleading to the Amended Complaint.

## II.    The Court Rejects Podcast Defendants' Objections to the R&R

The Court finds that Podcast Defendants' lack merit for similar reasons. Podcast Defendants first object to the R&R's conclusion that "phony," as used in the context and in conjunction with Plaintiff's identifying information, qualifies as defamatory. Podcast Defs. Obj. at 5–7. According to Podcast Defendants, "phony" is a statement of opinion, not provable fact, and does not become provable "merely because that opinion was stated alongside allegedly factual statements about Delgado's name or academic credentials." *Id.* at 6. The Court disagrees and adopts the reasoning and conclusion of the R&R, which properly considered the term in context. *See, e.g.*, *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 250 (1991) ("It has long been our standard in defamation actions to read published articles in context to test their effect on the average reader, not to isolate particular phrases but to consider the publication as a whole."); *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) ("Challenged statements are not to be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent' of the writing.") (quoting *November v. Time Inc.,* 13 N.Y.2d 175, 178 (1963)).

Indeed, Podcast Defendants' own authority does not support their position. For instance, in *Dilworth v. Dudley*, the Seventh Circuit stated that certain terms, like "phony," are "incapable of defaming because they are mere hyperbole . . . ." 75 F.3d 307, 310 (7th Cir. 1996). However, the Court did not state these terms can *never* be defamatory: rather, the Seventh Circuit made

6

clear that terms like "phony" have both a "literal" and "figurative" meaning, "and whether it is capable of being defamatory *depends on which meaning is intended, a question that can be answered only by considering the context in which the term appears*." *Id.* (emphasis added). And with respect to the word at issue in that case, "crank," the Seventh Circuit plainly stated they refused to go as far as to hold the word can never be defamatory. *Id.* In other words, *Dilworth* makes clear that terms like phony *can* be defamatory depending on context, and the R&R properly evaluated the surrounding context in reaching its conclusions. R&R at 21–22. Podcast Defendants' reliance on *Phantom Touring, Inc. v. Affiliated Publ'ns* is similarly unavailing. There, the First Circuit stated that a term like "phony" is unprovable and admits of numerous interpretations. 953 F.2d 724, 728 (1st Cir. 1992). But that is not this case: taking the word "phony" in context here—as courts are required to do—does not admit of "numerous interpretations." Rather, a reasonable listener would have understood Sonnen to be claiming Plaintiff is a "phony" with respect to the specific facts mentioned: her credentials and education.

Podcast Defendants next object that the R&R did not properly evaluate the statements in context. Podcast Defs. Obj. 7–9. Podcast Defendants object that the R&R should have evaluated them in the context of the *entire episode*, not just the specific *segment* of the podcast. *Id.* The Court again adopts the R&R on this point, finding it to be well grounded in fact and in law. Contrary to Podcast Defendants' assertions, the R&R contrasted the relevant segment with other segments and assertions in the podcast. The R&R expressly made a finding about the *entire* episode, concluding it could not find the podcast "as a whole was comedic, or had a comedic tone or purpose." R&R at 15. In addition, it correctly noted the significance of Sonnen's tone, his remarks before and after making the alleged statements, and the participants' reactions. *Id.* at 18–22.

Podcast Defendants' reliance on *Rapaport* similarly does not alter the conclusion stated in the R&R. In *Rapaport,* the parties were in a "hostile, vulgar, and hyperbolic feud" as the result of Rapaport's termination from Barstool. *Rapaport v. Barstool Sports Inc*., No. 22-2080, 2024 WL 88636, at *4 (2d Cir. Jan. 9, 2024). The Court noted, among other things, that the case involved a unique situation where "certain ostensibly factual statements could be reasonably understood as part of a tasteless effort to lampoon [the other side] because they were made in the emotional aftermath of a [dispute] when animosity would be expected to persist and in circumstances where an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Id.* (cleaned up). Several of the statements also originated from a "diss-track" which involved rapping a "constant stream of insults and slurs." *Id.* That stands in stark contrast to this case, where no feud is alleged and no "fiery" or emotional language accompanied Sonnen's statements. Indeed, Sonnen and Plaintiff had an "amiable" relationship for some time. Thus, the type of circumstances at issue in *Rapaport* which would affect a reasonable listener's interpretation do not exist here.

The Court rejects Podcast Defendants' remaining objections regarding actual malice and whether "stalking" can be defamatory. Regarding the former objection, the R&R discussed sufficient factual allegations giving rise to the requisite inference, such as the decision to censor the name Sonnen used, and a failure to investigate the statements despite what Podcast Defendants insist was clear skepticism and non-belief by the podcast participants. R&R at 30–32. And as to the latter, the Court rejects Podcast Defendants' "stalking" argument for the same reasons identified in the R&R: in the context of Sonnen's full statement, which included the assertion that Plaintiff had been banned from entering UFC venues, it could indicate to a reasonable listener she had *in fact* been stalking Sonnen.

**III.     The Court Partially Sustains Plaintiff Delgado's Objections to the R&R**

Finally, the Court considers Plaintiff's objections to the R&R. Plaintiff objects that (1) the R&R should have found Sonnen's statement that the UFC banned her from venues constitutes libel per se; (2) her tortious interference claim is not duplicative of her defamation claim; (3) she is not a "public figure" and therefore need not show actual malice; and (4) she has pled facts sufficient to support her aiding and abetting claim. The Court sustains Plaintiff's first objection and modifies the R&R only with respect to that objection.

First, the Court agrees with Plaintiff that Sonnen's statement she was banned from the UFC could be considered defamatory in context. The R&R correctly concluded that the term "phony" "alone may not be libel *per se*, [but] in the context of this case it is appropriately grouped with the other statements" that Plaintiff "was not using her real name, did not have a law degree, and did not graduate as claimed from Harvard Law." R&R at 35. However, the R&R reached the opposite conclusion for the statement Plaintiff had been banned from the UFC, finding that one could be banned for a "multitude of reasons." *Id.* The Court respectfully disagrees, and concludes that, just as "phony" could be deemed as defamatory in its context, so too can the statement that Plaintiff was banned from UFC venues. Sonnen stated, in relevant part, "I knew the phony because the phony had come after me and it got all the way to the chief legal officer of the Ultimate Fighting Championship that had to put a notice at every venue that we went to, to ban this person who was stalking me . . . ." ECF No. 29 ¶ 25. Here, in context, a reasonable listener could believe Plaintiff had been banned from UFC venues *because of* the alleged stalking, and an individual being "banned" for committing what the R&R correctly recognized as a serious crime can suffice to establish libel per se. R&R at 34–35. Accordingly, the Court modifies the R&R so as to permit Plaintiff's defamation claim with respect to this statement to survive dismissal.

9

Second, the Court adopts the R&R's conclusion that Plaintiff's tortious interference claim is duplicative of her defamation claim. "[I]t is well settled that a claim for tortious interference is duplicative of a defamation claim where both claims 'seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on [her] reputation.'" *Travelex Currency Servs., Inc. v. Puente Enterprises, Inc.*, No. 18-CV-1736 (ER), 2019 WL 1259102, at *7 (S.D.N.Y. Mar. 19, 2019) (quoting *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (summary order)). Here, while Plaintiff asserts she pleads different *damages* because certain of her business relationships allegedly suffered, the fact remains that "any economic damages [would] derive from [the] defamatory statements." *Goldman v. Barrett*, 733 F. App'x 568, 571 (2d Cir. 2018) (summary order). And as Plaintiff's authority confirms, the key question is whether the "reality" and "essence of the action" can be considered defamatory in nature, which the Amended Complaint clearly is. *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (1st Dep't 2009). Indeed, the very first paragraph of the Amended Complaint states "[t]his is an action arising out of numerous defamatory statements made by Sonnen about Ms. Delgado . . . .". ECF No. 29 ¶ 1.

Third, the Court similarly adopts the R&R's reasoning for, and conclusion that, Plaintiff can be characterized as a limited purpose public figure. R&R at 27–28. Plaintiff objects to this finding by arguing that a limited purpose public figure is subject to heightened scrutiny "only to the extent they are relevant to the public figure's involvement in a given controversy." Pl. Obj. at 11. The Second Circuit looks to four factors to determine whether a plaintiff qualifies as a limited-purpose public figure: The plaintiff must have:

> (1) successfully invited public attention to [her] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [her]self into a public controversy related to the subject of the litigation; (3)

10

assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2024 WL 4893277, at *7 (S.D.N.Y. Nov. 26, 2024) (citing *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136–37 (2d Cir. 1984)). As the R&R notes, Plaintiff essentially concedes her status as a limited-purpose public figure, given her work on the 2016 Trump campaign, frequent media and primetime appearances, and public travels with Donald Trump. R&R at 27–28. While Plaintiff insists her "limited" status as a public figure did not relate to the statement about being banned from the UFC, Sonnen's statements directly related to her work on the Trump campaign. The import of Sonnen's comments were that his statements "reached" Donald Trump and it resulted in Delgado's termination, which falls within the scope of her involvement as a public figure. *See* ECF No. 29 ¶ 25. Accordingly, the R&R correctly qualified Plaintiff as a limited-purpose public figure.

Finally, the Court adopts the R&R's conclusion that Plaintiff has not adequately stated a claim for aiding and abetting against Podcast Defendants. The Amended Complaint, at most, alleges that Podcast Defendants were reckless in publishing the podcast with Sonnen's statements. The fact that, at various points, the participants expressed skepticism about the truth of certain comments that Sonnen made does not itself support an inference they *actually knew* about their falsity, particularly given no relationship is alleged between Podcast Defendants and Plaintiff, and Plaintiff is not otherwise mentioned during the entire episode. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) ("[A]ctual knowledge is required to impose liability on an aider and abettor under New York law."). Plaintiff has therefore failed to allege sufficient facts to state this claim.

## CONCLUSION

For the foregoing reasons, the R&R is ADOPTED in part and MODIFIED in part as set forth in this Order. Defendants' motions to dismiss are GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to terminate ECF Nos. 33, 36, and 66.

Dated: March 31, 2025
       New York, New York

                                          SO ORDERED.

                                          JESSICA G. L. CLARKE
                                          United States District Judge